**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRYAN L. RUPLE,

                              Plaintiff,

   v.                                          No. 09-CV-1108
                                                 (NAM/DRH)

LYNNE BAUSCH, County Nurse at Otsego
County Jail; RICHARD DEVLIN, JR., Sherriff
of Otsego County; and LAURA CHILD,
Information Officer for Otsego County Jail,

                              Defendants.

---

**APPEARANCES:**

BRYAN L. RUPLE
Plaintiff Pro Se
08-B-4050
Wyoming Correctional Facility
Post Office Box 501
Attica, New York 14011

BAILEY, KELLEHER & JOHNSON, P.C.
Attorneys for Defendants
Suite 507
Pine West Plaza 5
Washington Avenue Extension
Albany, New York 12205

**OF COUNSEL:**

NANNETTE R. KELLEHER, ESQ.

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

   Plaintiff pro se Bryan Ruple ("Ruple"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that while he was incarcerated at the Otsego County Jail, three County

---

      [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

employees, violated his constitutional rights under the Fourteenth Amendment, the Health Insurance Portability and Accountability Act, 29 U.S.C. § 1182 ("HIPAA"), Section 18 of the New York State Public Health Law, and the New York State Freedom of Information Law. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 17. Ruple opposes the motion. Dkt. No. 19. For the following reasons, it is recommended that defendant's motion be granted and the complaint be dismissed with prejudice.

## I. Background

The facts are related herein in the light most favorable to Ruple as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999). All events appear to have occurred during 2007 and 2008 when Ruple was incarcerated at Otsego County Jail, prior to his transfer to DOCS custody. Compl. ¶¶ 1-4, 6.

On December 15, 2008, defendant Bausch, a nurse, disclosed medical records to defendant Sheriff Devlin, who in turn submitted those records to the County Attorney James Konstanty, without first obtaining Ruple's permission. Compl. ¶ 6; see also Dkt. No. 1-1 at 2. The surrender of such records coincides with Ruple's filing of a previous lawsuit in the Northern District of New York.[2] Compl. ¶ 5. Ruple contends that the disclosures made by Bausch "did not pertain to . . . [the] pending case." Id. ¶ 6; see also Dkt. No. 1-1 at 3-4. During 2007 and 2008, Bausch allegedly provided unnamed correctional staff with

---

[2] The previous lawsuit was cited in Ruple's complaint and alleged an Eighth Amendment violation that he was subjected to excessive force. See Compl. ¶ 5; see also Ruple v. Reckeweg, No. 08-CV-1307 (FJS/RFT)); Defs. Mem. of Law (Dkt. No. 17-2) at 1-2. The case was settled. Compl. ¶ 5.

information regarding the medications prescribed for Ruple.  Compl. ¶ 6.  Additionally, defendant Child released medical information from Ruple's medical file, to Ruple, which he had requested.  Id.  ¶ 6; see also Dkt. No. 1-1 at 5-8.  This action followed.

## II.  Discussion

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n

3

a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. HIPAA

HIPAA creates a monetary remedy for the wrongful disclosure of medical information. 42 U.S.C. § 1320d-6.  "However, HIPAA does not confer a private cause of action to any particular class of individuals or either explicitly or implicitly, confer to private individuals a right of enforcement." Hamilton v. Smith, No. 06-CV-805 (GTS/DRH), 2009 WL 3199531, at *20 (N.D.N.Y. Jan. 13, 2009) modified 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (internal quotation marks and citations omitted).  "Furthermore, HIPAA provides for no federal cause of action; instead, HIPAA provides for an enforcement mechanism for the Secretary of Health and Human Services [HHS]." Id. (citations omitted).  Therefore, Ruple cannot sustain his HIPAA claim since there is no private cause of action granted by the statute.  Ruple's only recourse through this statute is to request the State of New York or

4

the Secretary of HHS to bring the action on his behalf.

Accordingly, defendants' motion to dismiss on this ground should be granted.

### C. Privacy in Medical Records

Claims surrounding disclosure of confidential medical information have been analyzed under both the Eighth and Fourteenth Amendments. See generally Rodriguez v. Ames, 287 F. Supp. 2d 213, 218-221 (S.D.N.Y. 2003). Liberally construing the complaint, Ruple has also alleged an Eighth Amendment violation pertaining to the disclosure of his medical records.

#### 1. Eighth Amendment

The Eighth Amendment provision against cruel and unusual punishment includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must demonstrate deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free

5

from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976).  "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703.  Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Ruple has failed to allege what, if any, serious medical need he suffered from so that the disclosure of his medical records could be considered deliberately indifferent to his serious

6

medical needs. Without such an allegation, Ruple has failed to proffer facts upon which relief could be granted. Accordingly, he has failed to establish the first prong of the Eighth Amendment analysis.

However, even if the unknown conditions reflected in Ruple's records did constitute serious medical needs, the disclosure of that information to staff and ultimately the county attorney did not constitute malicious interference or deliberate indifference. The disclosures were necessary (1) to investigate the pending litigation and determine its validity, (2) to provide Ruple with the appropriate medication to ensure his health and safety and (3) comply with a facility request to provide Ruple with his own health information which he had properly requested. The disclosures were limited in scope and purpose and, at most, could be categorized as negligent if others viewed them. As previously discussed, negligent behavior is not actionable under § 1983. Hathaway, 99 F.3d at 553.

Accordingly, to the extent that Ruple alleges an Eighth Amendment violation, such allegation is without merit and defendants' motion to dismiss the claim should be granted.

### 2. Fourteenth Amendment

As of 1994, the Second Circuit recognized a prisoner's privacy interest in confidentiality of medical and health-related information. Doe v. City of N.Y., 15 F.3d 264, 267 (2d Cir. 1994). The Second Circuit further held that prisoners retained a right to privacy for medical information unless (1) that disclosure was reasonably related to legitimate penological interests or (2) the information contained within the medical records was not the type of sensitive medical information contemplated by the courts for constitutional protection. See Powell v. Schriver, 175 F.3d 107, 111-13 (2d Cir. 1999); see also Rodriguez v. Ames, 287

7

F. Supp. 2d 213, 219-20 (W.D.N.Y. 2003) (upholding Fourteenth Amendment protection in cases where the prisoner "has an unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence," or where the information "spread through 'humor or gossip.'") (quotations omitted); Webb v. Goldstein, 117 F. Supp. 2d 289, 298-99 (E.D.N.Y. 2000) (dismissing a Fourteenth Amendment claim because the prisoner "has not alleged that his prison records contained the sort of sensitive medical information at issue in . . . Powell."). The Second Circuit has extended Due Process protection to medical information surrounding the conditions of transsexualism and a positive HIV status.[3] Watson v. Wright, No. 08-CV-62 (NAM/GJD), 2010 WL 55932, at *1 (N.D.N.Y. Jan. 5, 2010). The "person's interest in the privacy of medical information will vary with the medical condition." Id. Therefore, where a prisoner holds a right to privacy in his medical condition, "prison officials may impinge on it only to the extent that their actions are reasonably related to legitimate penological interests." Id.

    Here, Ruple fails to allege from what, if any, severe health condition he suffers. As the only two noted conditions worthy of protection are transsexualism and HIV, and there is no plausible indication in the record that Ruple was suffering from either condition, he has failed to plausibly establish a Fourteenth Amendment claim. In fact, the medical information attached to the complaint shows numerous liver enzyme tests and a conclusion that Ruple's

---

[3] This and other districts in the circuit have contemplated numerous illnesses which have not been deemed worthy of Fourteenth Amendment protection with regard to medical confidentiality, including Hepatitis A and C, high blood pressure, high cholesterol, wrist injuries, stomach problems, and proctitis. Watson v. Wright, No. 08-CV-62 (NAM/GJD), 2010 WL 55932, at *1 (N.D.N.Y. Jan. 5, 2010) (citations omitted)

8

elevated enzyme levels "were due to fatty infiltrations and med[ication]s." Dkt No. 1-1 at 8. Such notations do not indicate an active HIV infection but instead a quest to seek out potential liver damage and its cause. The only other ailment which was noted in the attached medical records was depression, for which Ruple was not receiving active treatment and was not indicated to be of a severe or emergent nature. Dkt. No. 1-1 at 8. Accordingly, this medical information is not the kind expected to invoke discrimination, intolerance, or violence. Additionally, these disclosures were made to (1) marshal evidence for a defense in litigation which Ruple commenced, (2) inform staff of medication for which Ruple required disbursement to maintain his health and safety, and (3) comply with a facility request initiated by Ruple requesting his own medical records, all of which represent legitimate penological interests.

Accordingly, Ruple's Fourteenth Amendment claim is without merit and defendants' motion to dismiss should be granted as to this claim.

### D. State Law

Ruple contends that defendants have also violate Section 18 of the New York State Public Health Law and the New York State Freedom of Information Law. First, "[a] violation of state law neither gives [Ruple] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." Doe v. Conn. Dep't of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990) (internal quotation marks and citations omitted); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y.

9

2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation marks and citations omitted).  Accordingly, for this reason, the defendants' motion to dismiss should be granted as to Ruple's state law claims.

Second, even if the substance of the laws were to be considered, Ruple has failed to allege any statutory violations.  Protection of patient information from disclosure to any other person is ensured by Section 18 of the Public Health Law.  However, providing medical information to "an attorney consulted by," a health care provider does not constitute a disclosure of patient information to an unconsented to third party.  N.Y. Pub. Health Law § 18 (1)(e).  Therefore, Bausch's disclosure of Ruple's medical records to defendant Devlin for ultimate dispersal to the county attorney did not constitute a violation of the law because the records were being delivered to an attorney for litigation purposes.[4]

Furthermore, Bausch's alleged disclosure of a list of medications for prescribed to Ruple was also not in contravention of state law.  First, there are no facts alleged to identify when and to whom the list of medications was divulged.  Even if such events did occur, however, they were still lawful because New York State rules and regulations require that, if medications are warranted, inmates shall be provided such medications by staff as prescribed by the facility physician.  N.Y. Comp. Codes R. & Regs. tit. 9, § 7010.2(e), (j).  Therefore, to the extent that any medication lists were disclosed to staff, such disclosures

---

[4] Moreover, to the extent Ruple contends that the records pre-dated the excessive force incident at issue in his prior action, such contentions are legitimately explained by the attorney wishing to see what, if any, preexisting conditions and treatment Ruple was undergoing in the weeks prior to the alleged incident.  Compl. ¶ 6; Dkt. No. 1-1 at 4.

are authorized so that medication may be properly provided.

Additionally, Ruple's contentions fail to support his allegations against Child. The Public Health Law provides that "upon the written request of any subject, a health care provider shall provide an opportunity . . . for such subject to inspect any patient information concerning or relating to the examination or treatment of such subject . . . .," including a copy of such records. N.Y. Pub. Health Law § 18(2)(a), (g). Therefore, Child was obligated to provide Ruple with his medical information, unless "review of the information c[ould] reasonably be expected to cause substantial and identifiable harm to the subject . . . ." Id. § 18(3)(a). Such cause for concern has not been advanced and, therefore, there is nothing in the record to rebut Child's duty to provide Ruple with such documents. This statutory interpretation, along with a similar conclusion when applying the New York Freedom of Information Law ("FOIL"), has also been utilized by the state court in holding that patients have a right to initiate inquiry into, and discovery of, their own medical records and that limitations on the dissemination of such information occur only when there is a showing of "substantial and identifiable harm to the subject or others which would outweigh the qualified person's right of access." Mantica v. New York State Dep't of Health, 248 A.D.2d 30, 31-33 (3d Dep't 1998) (citing N.Y. Pub. Health Law § 18(2), (6); N.Y. Pub. Off. Law § 87).

Accordingly, defendants' motion to dismiss should be granted as to this claim.

### E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed .Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citations omitted).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

   In this case, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Ruple's allegations as true, he has not alleged that defendants violated his constitutional rights.  Accordingly, in the alternative, defendants' motion to dismiss should be granted on this ground.

### III. Conclusion

   For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No.17) be **GRANTED** and that the complaint be **DISMISSED WITH PREJUDICE** as to all defendants.

   Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 21, 2010
       Albany, New York

*[signature: David R. Homer]*
United States Magistrate Judge